UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**CHARLEEN HANNON**
P.O. Box 634
4237 Freeman Road
Middleport, NY 14105

                        Plaintiff,                             **COMPLAINT**

v.

**GENERAL MOTORS, LLC, a/k/a**
**GM COMPONENTS HOLDINGS, LLC, f/k/a**
**DELPHI AUTOMOTIVE SYSTEMS, LLC, a/k/a**
**DPH-DAS, LLC, f/k/a**
**GENERAL MOTORS CORPORATION**
300 Renaissance Center
Detroit, Michigan  48098

and

**UNITED AUTOMOBILE, AEROSPACE and**
**AGRICULTURAL IMPLEMENT WORKERS OF**
**AMERICA a/k/a UAW LOCAL 686**
524 Walnut Street
Lockport, New York 14094

                        Defendants.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

       Plaintiff, CHARLEEN HANNON ("Ms. Hannon" or "Plaintiff"), by and through her attorneys, THE TARANTINO LAW FIRM, LLP, for her Complaint against Defendants, GENERAL MOTORS, LLC, a/k/a GM COMPONENTS HOLDINGS, LLC, f/k/a DELPHI AUTOMOTIVE SYSTEMS, LLC, a/k/a DPH-DAS, LLC, f/k/a GENERAL MOTORS CORPORATION ("GM") and UNITED AUTOMOBILE, AEROSPACE and AGRICULTURAL IMPLEMENT WORKERS OFAMERICA a/k/a UAW LOCAL 686 ("UAW LOCAL 686"), alleges as follows:

## JURISDICTION AND VENUE

1.      This action is authorized and instituted pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., as amended by the Civil Rights Act of 1991, ("Title VII"); and the New York Human Rights Law, ("NYHRL"), Executive Law § 290 *et seq.,* for damages arising from discrimination and retaliation based on race, and the discriminatory terms and conditions of employment imposed by Defendants.

2.      Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331, 1337, 1343 (4), 2201, 2202, and pursuant to 42 U.S.C. § 1988.

3.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental and pendent subject matter jurisdiction over the claims asserted by Plaintiff that are grounded in State law, because the State law claims are so related to the claims over which this Court has original subject matter jurisdiction and arise from a common nucleus of operative facts, and the State law claims form part of the same case or controversy under Article III of the United States Constitution.

4.      The venue of this action is properly place in the Western District of New York pursuant to § 706(f)(3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. § 1391. Plaintiff resides in this district. Defendants are doing business in this district, and a substantial part of the events giving rise to Plaintiff's claims of discrimination and retaliation occurred in this district.

## PARTIES

5.      Plaintiff is a citizen of the United States of America, and resides in the County of Niagara, and State of New York.

6.      Plaintiff is an African American female.

7.     At all relevant times, Plaintiff was or is an employee of defendant, GM, as defined by 42 U.S.C. §1981; Title VII, 42 U.S.C. § 2000(e) and the New York State Human Rights Law, Executive Law § 290 *et seq*.

8.     Upon information and belief, Defendant GENERAL MOTORS, LLC, is a foreign limited liability company created in the State of Delaware and is authorized to conduct business in the State of New York, having its corporate headquarters at 200 Renaissance Center, Detroit, Michigan and having a production facility located at 200 Upper Mountain Road, Lockport, New York.

9.     Upon information and belief, Defendant, GM COMPONENTS HOLDING, LLC, is a foreign limited liability company created in the State of Delaware and is authorized to conduct business in the State of New York, having its corporate headquarters at 200 Renaissance Center, Detroit, Michigan and having one of four production facilities located at 200 Upper Mountain Road, Lockport, New York.

10.    Upon information and belief, Defendant, GM COMPONENTS HOLDING, LLC is a privately held, wholly owned subsidiary of Defendant GENERAL MOTORS, LLC.

11.    Upon information and belief, Defendant GENERAL MOTORS, LLC was formerly known as GENERAL MOTORS CORPORATION.

12.    Upon information and belief, GENERAL MOTORS CORPORATION was a foreign business corporation incorporated in the State of Delaware and was authorized to conduct business in the State of New York, and, until approximately 1999, maintained a production facility located at 200 Upper Mountain Road, Lockport, New York.

13.    Upon information and belief, DELPHI AUTOMOTIVE SYSTEMS, LLC, was a foreign limited liability company created in the State of Delaware and was authorized to conduct

business in the State of New York, and maintained a production facility located at 200 Upper Mountain Road, Lockport, New York.

14.    Upon information and belief, in 1994, GENERAL MOTORS CORPORATION formed Automotive Components Group (ACG) which was renamed the next year to DELPHI AUTOMOTIVE SYSTEMS, LLC.

15.    Upon information and belief, in 1999, GENERAL MOTORS CORPORATION "spun off" 4 parts plants:  Harrison Thermal Systems, Lockport, New York manufacturing HVAC systems and PTC components; Rochester Powertrain, Rochester, New York manufacturing engine management systems and related products; Wyoming Powertrain Systems, Grand Rapids, Wyoming, manufacturing valve train products; and Delco Electronics and Safety, Kokomo, Indiana manufacturing automotive electronics and related products.  Those four plants became DELPHI AUTOMOTIVE SYSTEMS LLC.

16.    Upon information and belief, DELPHI AUTOMOTIVE SYSTEMS, LLC continued to be the primary suppliers of parts to GENERAL MOTORS CORPORATION and was essentially controlled by GENERAL MOTORS CORPORATION.

17.    Upon information and belief, in 2005 both GENERAL MOTORS CORPORATION and DELPHI AUTOMOTIVE SYSTEMS LLC declared bankruptcy.

18.    Upon information and belief, DELPHI AUTOMOTIVE SYSTEMS, LLC continued doing business as a debtor-in-possession, known as DPH-DAS LLC.

19.    Upon information and belief, DPH-DAS, LLC was a foreign limited liability company created in the State of Delaware and was authorized to conduct business in the State of New York, having a production facility located at 200 Upper Mountain Road, Lockport, New York.

20.    Upon information and belief, GENERAL MOTORS CORPORATION continued

doing business as a debtor-in-possession known as Motors Liquidation Company.

21.     Upon information and belief, in 2009, Motors Liquidation Company transferred all assets to Defendant GENERAL MOTORS, LLC.

22.     Upon information and belief, in or about October 2009, Defendant GENERAL MOTORS, LLC re-acquired from DPH-DAS LLC the four parts plants, including Delphi Harrison Thermal Systems in Lockport, New York, and identified them as GM COMPONENTS HOLDING, LLC.

23.     Upon information and belief, Defendant GM COMPONENTS HOLDING, LLC was created by Defendant GENERAL MOTORS, LLC as a wholly owned subsidiary of Defendant GENERAL MOTORS, LLC as a result of the bankruptcy filings of both DELPHI AUTOMOTIVE SYSTEMS, LLC and GENERAL MOTORS CORPORATION.

24.     At all relevant times, the GM Defendants are and were an "employer" as defined in § 701(b) of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e(b), and in the New York State Human Rights Law, Executive Law § 290 *et seq.*

25.     At all relevant times, the GM Defendants, are and are located in the County of Niagara, and State of New York.

26.     Upon information and belief, Defendant UAW Local 686, is an agent that represents all of the hourly workforce at the Lockport GM facility and at all relevant times, Plaintiff was or is a member of Defendant, UAW Local 686.

27.     At all relevant times, UAW Local 686, is and is located in the County of Niagara, and State of New York.

28.    At all relevant times, all Defendants have continuously been engaged in an industry affecting commerce within the meaning of § 701(h) of Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000-e(h).

## STATEMENT OF THE CASE

29.    Plaintiff is a black, African-American female.

30.    Plaintiff has been subjected to a continuing course of racial discrimination by Defendants their agents, servants and/or employees.

31.    Plaintiff has been required to work in a racially hostile environment where she has been subject to harassment, intimidation, and coercion. This behavior has interfered with Plaintiff's ability to perform her job.

32.    Defendants, their agents, servants and/or employees, were aware that Plaintiff was subjected to racial discrimination and a racially hostile work environment.  However, Defendants refused to fully investigate, stop or prevent the discriminatory behavior from continuing.

33.    Defendants, their agents, servants and/or employees have treated Plaintiff adversely because she complained of and opposed unlawful discriminatory practices by Defendants, their agents, servants and/or employees.

34.    Defendants' discriminatory and retaliatory acts include, but are not limited to those acts set forth herein.

35.    Plaintiff Charleen Hannon began her employment with GM in October of 2018, at its Lockport Plant located at 200 Upper Mountain Road, Lockport, New York ("GM Lockport Plant") where she has continued to work to the present time.

36.    Plaintiff's initial position was as a temporary hourly laborer employee, from which she was promoted on or about August 2020 to a full-time permanent laborer with GM.

37.    On or about January 2021, Plaintiff began dating a Caucasian male coworker, Keith Acquard, a Skilled trades welder, employed with GM.

38.    Prior to January of 2021, Mr. Acquard dated a Caucasian female laborer, Tracy McKenna, also employed with GM.

39.    On or about January 2021, Ms. McKenna was considered Mr. Acquard's ex-girlfriend as they had ended their relationship.

40.    On or about January 2021 and all relevant times thereafter, the Plaintiff, Mr. Acquard and Ms. McKenna were coworkers and employees of GM.

41.    On or about January 2021 and all relevant times thereafter, the Plaintiff, Mr. Acquard and Ms. McKenna all worked at the GM Lockport Plant.

42.    On or about January 2021 and all relevant times thereafter, the Plaintiff, Mr. Acquard and Ms. McKenna were all members of, and represented by, defendant UAW Local 686.

43.    Beginning in January of 2021 and up through March of 2024, Plaintiff was continually harassed because of her African American race by her Caucasian coworker, Ms. McKenna.

44.    Between January 2021 and March 2024, Plaintiff experienced harassment and hostility from Ms. McKenna, an employee of GM and member of UAW Local 686, as a result of Plaintiff's race and association with Mr. Acquard.

45.    Between January 2021 and March 2024, Ms. McKenna requested, and received from GM, a shift change for the sole purpose of working together with, and harassing, Plaintiff.

46.    Between January 2021 and March 2024, upon receiving the shift change, Ms. McKenna began harassing the Plaintiff by frequently following Plaintiff into the bathroom, following her around the GM Lockport Plant, and following Plaintiff to her car located in the

parking lot of the GM Lockport Plant. Ms. McKenna also engaged in racially hostile behavior by calling Plaintiff racial slurs such as "n*gger" and "black b*tch."

47.     Between January 2021 and February 2023, Plaintiff notified GM's Human Resources Department, as well as UAW Local 686, of Ms. McKenna's stalking, harassing and racist behavior. During that time, GM and UAW Local 686, failed to address Plaintiff's complaints.

48.     On or about February of 2023, GM and UAW Local 686 moved both Ms. McKenna and Plaintiff to different work areas, and different parking areas, at the GM Lockport Plant.

49.     From February of 2023 to March of 2024, Ms. McKenna continued to engage in harassing, racist and hostile behavior towards Plaintiff, even after Ms. McKenna's work and parking area were moved. Ms. McKenna continued to harass Plaintiff by stalking Plaintiff around the GM Lockport Plant and stalking Plaintiff's car in the GM Lockport Plant parking lot.

50.     Between February of 2023 and March of 2024, Plaintiff feared Ms. McKenna's racist and harassing behavior and as a result, feared for her safety at the GM Lockport Plant. Plaintiff therefore required various coworkers at GM to accompany her to the restroom and parking lot to ensure she was not alone with Ms. McKenna.

51.     Between February of 2023 and March of 2024, Plaintiff filed numerous reports with the City of Lockport Police regarding Ms. McKenna's continuing harassment and stalking.

52.     Between February of 2023 and March of 2024, Plaintiff again notified GM's Human Resources Department, as well as UAW Local 686, of Ms. McKenna's stalking, harassing and racial discriminatory behavior at the GM Lockport Plant. This included Plaintiff notifying the Defendants of her fear for her safety, the numerous police reports filed by Plaintiff against Ms. McKenna, Plaintiff providing supporting witness statements from GM coworkers attesting to Ms.

McKenna's racial and harassing behavior, as well as Plaintiff providing Defendants with dash cam video and photographs as evidence of Ms. McKenna's stalking and harassment.

53.     Between February of 2023 and March of 2024, both GM and UAW Local 686, failed to address Plaintiff's complaints and/or protect Plaintiff's safety, and in particular, UAW Local 686 representative, Jeramy Huber, advised Plaintiff he "does not take sides," and he "did not want to hear anything else" from Plaintiff for the sake of her job.

54.     Instead of taking remedial action, on or about July 2023, GM's Human Resources Department discriminatorily and retaliatorily moved Plaintiff's work location at the GM Lockport Plant from department 463 to department 222, located in the farthest back corner of the Plant. Ms. McKenna was not moved, only Plaintiff to a new department and job. This was a more physically taxing job for Plaintiff both as to the physical location of the new department at the GM Lockport Plant, as well as the location of the associated parking lot.

55.     Defendant UAW Local 686 did not object or adequately defend Plaintiff in response to Defendant GM's retaliatory and discriminatory transfer.

56.     The repetitive stress of the new position on the assembly line caused physical injuries to Plaintiff's wrists for which she had to received medical treatment.

57.     From July of 2023 to March of 2024, Ms. McKenna continued to stalk, harass and engage in racial discriminatory behavior as to the Plaintiff.

58.     Between July of 2023 and March of 2024, Plaintiff continued to file reports with the City of Lockport Police regarding Ms. McKenna's continuing harassment and stalking. Furthermore, Plaintiff obtained an order of protection from the police against Ms. McKenna.

59.     Between July of 2023 and March of 2024, Plaintiff again notified GM's Human Resources Department, as well as UAW Local 686, of Ms. McKenna's stalking and harassing

behavior. This involved Plaintiff notifying the Defendants she continued to file police reports against Ms. McKenna, as well as providing Defendants with dash cam video evidence obtained by the Plaintiff. Plaintiff further advised the Defendants the change of departments and associated parking lot, which was only applied to the Plaintiff, was a physical hardship.

60.     Between July of 2023 and March of 2024, both GM and UAW Local 686, failed to rectify Ms. McKenna's conduct detailed herein, or address Plaintiff's continued complaints and/or protect Plaintiff's safety.

61.     On or about January 2024 and in response to Plaintiff's complaints regarding the change of departments being a physical hardship, GM's Human Resources advised Plaintiff her new department 222 was a permanent placement. Defendants advised Plaintiff she could not move. Defendants further advised Plaintiff Ms. McKenna still had a job with GM. Defendants took no similar action, change of department, and/or such hardship against Ms. Mckenna.

62.     Ms. McKenna's employment with GM and association with UAW Local 686 ended in March of 2024.

63.     As a result of the conduct of Defendants, their agents, servants, and/or employees, Plaintiff not only feared for her safety, she was also humiliated, embarrassed and subjected to degradation and ongoing severe emotional distress.

64.     In response to Plaintiff's complaints regarding Ms. McKenna's hostile and discriminatory behavior, Defendants retaliated against Plaintiff, moving her to a new department which was physically taxing for her.

65.     Ms. McKenna, a Caucasian worker at the GM Lockport Plant, continually engaged in harassing, stalking and discriminatory behavior against Plaintiff. Yet, Ms. McKenna never suffered any negative employment consequences due to her harmful and discriminatory actions.

In contrast, Plaintiff, an African American, endured the above-detailed discriminatory and retaliatory employment actions from Defendants.

66.    All of the Defendants' actions, or inactions, as detailed herein were intentional, discriminatory and retaliatory, and based on Plaintiff's race and prior complaints of harassment and discrimination.

67.    Defendants knew, or through the exercise of reasonable diligence, should have known of the wrongful and unlawful actions, conduct and omissions of their agents, servants, and/or employees and took no remedial action.

68.    A Caucasian employee, who engaged in inappropriate, hostile and discriminatory behavior, was not subjected to appropriate discipline by the Defendants.

69.    On or about April 2024, Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission on the basis of her race and for retaliation against the Defendants.

70.    As a result of the actions of Defendants, including but not limited to those described above, Defendants, its agents, servants, and employees, have treated Plaintiff diversely because of her race and in retaliation for her complaints of discrimination, and engaged in a pattern and practice of knowing, intentional, willful and voluntary course of wrongful discriminatory conduct.

## CONDITIONS TO PRECEDENT TO ACTION

71.    Plaintiff, Charleen Hannon, has complied with all of the jurisdictional prerequisites to action pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000-e as follows:

A.    In Accordance with the time prescribed by 42 U.S.C. § 2000-e, Plaintiff filed a charge of discrimination against Defendant, GM (Charge No. 525-2024-0277), with the EEOC on or about April 2, 2024, on the basis of her race and disability.

B.    Shortly thereafter, Plaintiff filed a charge of discrimination against Defendant, UAW Local 686 (Charge No. 525-2024-01244), with the EEOC on or about April 10, 2024, on the basis of her race and disability.

C.    On about the same dates as the aforementioned EEOC charges were filed, the EEOC caused a copy of said charges to be filed with the New York State Division of Human Rights.

D.    On or about February 13, 2025, the EEOC sent notification to Plaintiff that she had the right to sue UAW Local 686 (Charge No. 525-2024-01244) within 90 days of the receipt of the notification.  A copy of the EEOC Right to Sue relative to UAW Local 686 is attached hereto as **Exhibit "A."**

E.    On or about April 28, 2025, the EEOC sent notification to Plaintiff that she had the right to sue GM (Charge No. 525-2024-0277) within 90 days of the receipt of the notification.  A copy of the EEOC Right to Sue relative to GM is attached hereto as **Exhibit "B."**

F.    Plaintiff has filed this action within 90 days of the receipt of both of the notifications of the Right to Sue from the EEOC.

**<u>AS AND FOR A FIRST CAUSE OF ACTION: RACE<br>DISCRIMINATION IN VIOLATION OF<br>TITLE VII OF THE CIVIL RIGHTS ACT OF 1964<br>42 U.S.C. §2000(e) et seq. AGAINST DEFENDANT GM</u>**

72.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "71" as though fully set forth herein.

73.    Defendant GM discriminated against Plaintiff with respect to the terms and conditions of employment because of her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, as amended by the Civil Rights Act of 1991.

74.    Defendant GM violated Title VII by creating and allowing a culture of race discrimination to permeate Plaintiff's workplace and all aspects of her work environment.  This hostile and abusive work environment was created by decisions, actions and conduct engaged in by Defendant GM. The severe and pervasive abusive environment was maintained since January of 2021 through the present and fostered and promoted by Defendants' discriminatory acts and conduct as described herein.

75.    The discrimination described herein shows a continuous pattern of unlawful employment practices.

76.    Defendant GM had actual and constructive knowledge of the conduct described herein, but failed to take any remedial action to put an end to the harassment Plaintiff suffered.

77.    Defendant GM knowingly and recklessly discriminated against the Plaintiff on the basis of her race by having direct and firsthand knowledge of discriminatory acts towards Plaintiff and failing to take remedial and precautionary steps for the protection of the rights of the Plaintiff.

78.    Defendant GM knowingly and recklessly permitted its employees, supervisors and leadership team to treat African American employees in a manner different from the treatment received by similarly situated Caucasian employees.

79.    Defendant GM failed to provide Plaintiff with a suitable work environment and knowingly and recklessly exposed Plaintiff to a racially hostile and unsupportive work environment.

80.     Defendant GM's wrongful acts, conducts, and omissions including but not limited to, those described above, were willful and wanton and done with malice or reckless indifference to Plaintiff's rights and feelings, thereby entitling Plaintiff to an award of compensatory damages, including but not limited to lost wages, loss of future income, compensation and benefits, compensation for emotional pain and suffering and/or punitive damages.

81.     As a result of Defendant GM's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million .

82.     Plaintiff demands a jury trial as to all issues so triable.

<u>**AS AND FOR A SECOND CAUSE OF ACTION: RACE<br>DISCRIMINATION IN VIOLATION OF<br>NEW YORK HUMAN RIGHTS LAW<br>NEW YORK EXECUTIVE LAW §290 et seq.<br>AGAINST DEFENDANT GM**</u>

83.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "82" as though fully set forth herein.

84.     Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a).

85.     During the course of Plaintiff's employment, Defendant GM treated Plaintiff adversely because of her race and engaged in a knowing, intentional, willful, and voluntary course of wrongful discriminatory conduct in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq.*

86.     As a result of Defendant GM's actions, conduct, and omissions, including but not limited to those described above, Defendant GM subjected Plaintiff to adverse employment action because of her race in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq.*

87.     Defendant GM has engaged in a pattern and practice of discrimination against Plaintiff with respect to compensation, terms, conditions, and privileges of employment and subjected her to a hostile work environment because of her race in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq.*

88.     Defendant GM discriminated against Plaintiff in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq*.

89.     Defendant GM's wrongful acts, conduct, and omissions, including but not limited to those described above, were willful and wanton and done with a reckless disregard of Plaintiff's rights.

90.     As a result of Defendant GM's actions, conduct, and omissions, including but not limited to, those described above, Plaintiff incurred damages including but not limited to, lost wages and employee benefits, lost employment opportunities, lost future income, compensation and benefits, mental anguish, and embarrassment.

91.     As a result of Defendant GM's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

92.     Plaintiff demands a jury trial as to all issues so triable.

## AS AND FOR A THIRD CAUSE OF ACTION:  RACIAL HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 42 U.S.C. §2000(e) et seq. AGAINST DEFENDANT GM

93.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "92" as though fully set forth herein.

94.     Defendant GM discriminated against Plaintiff with respect to the terms and conditions of employment because of her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, as amended by the Civil Rights Act of 1991.

95.    Defendant GM violated Title VII by creating and allowing a culture of race discrimination to permeate Plaintiff's workplace and all aspects of her work environment by continually allowing employees to make discriminatory statements against Plaintiff.  This hostile and abusive work environment was created by decisions, actions and conduct engaged in by Defendant GM.

96.    The discrimination described herein shows a continuous pattern of unlawful employment practices.

97.    Defendant GM had actual and constructive knowledge of the conduct described herein, but failed to take any remedial action to put an end to the harassment Plaintiff suffered.

98.    Defendant GM knowingly and recklessly discriminated against the Plaintiff on the basis of her race by having direct and firsthand knowledge of discriminatory and racially hostile acts towards Plaintiff and failing to take remedial and precautionary steps for the protection of the rights of the Plaintiff.

99.    Defendant GM failed to provide Plaintiff with a suitable work environment and knowingly and recklessly exposed Plaintiff to a racially hostile and unsupportive work environment.

100.    Defendant GM's wrongful acts, conducts, and omissions including but not limited to, those described above, were willful and wanton and done with malice or reckless indifference to Plaintiff's rights and feelings, thereby entitling Plaintiff to an award of compensatory damages, including but not limited to lost wages, loss of future income, compensation and benefits, compensation for emotional pain and suffering and/or punitive damages.

101.    As a result of Defendant GM's wrongful acts, conduct, and omissions, including

but not limited to those described above, Plaintiff has been damaged in the amount of $2 million .

102.    Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c),

Plaintiff demands a trial by jury as to all issues so triable.

### AS AND FOR A FOURTH CAUSE OF ACTION: RACIAL HOSTILE WORK ENVIRONMENT IN VIOLATION OF NEW YORK'S HUMAN RIGHTS LAW (N.Y. Executive Law § 290 et seq.) AGAINST DEFENDANT GM

103.    Plaintiff repeats and realleges each and every allegation contained in

paragraphs "1" through "102" as though fully set forth herein.

104.    As set forth above, this Court has jurisdiction over Plaintiff's state law claim

pursuant to 28 U.S.C. § 1367.

105.    Defendant GM violated the Executive Law by creating and allowing a culture

of age, race, and disability discrimination and hostile work environment to permeate Plaintiff's

workplace and all aspects of her work environment.  This hostile and abusive work environment

was created by decisions, actions and conduct engaged in by Defendants.

106.    The discrimination described herein shows a continuous pattern of unlawful

employment practices. Specifically, Defendants created a hostile work environment by (1) failing

to take corrective or remedial action against employees making racially discriminatory and racially

hostile remarks about Plaintiff, and (2) transferring Plaintiff to an unfavorable position and

department that caused physical injury to her wrists. Defendants' actions have caused injury to

Plaintiff and a strain on her emotional and physical health.

107.    Defendant GM had actual and constructive knowledge of the conduct described

herein, but failed to take any remedial action to put an end to the discrimination Plaintiff suffered

and the hostile environment to which she was subjected.

108.    Defendant GM failed to provide Plaintiff with a suitable work environment and

knowingly and recklessly exposed Plaintiff to a discriminatory and potentially physically dangerous work environment due to Plaintiff's race.

109.    Defendant GM's wrongful acts, conducts, and omissions including but not limited to, those described above, were willful and wanton and done with malice or reckless indifference to Plaintiff's rights and feelings, thereby entitling Plaintiff to an award of compensatory damages, including but not limited to lost wages, loss of future income, compensation and benefits, compensation for emotional pain and suffering and/or punitive damages.

110.    As a result of Defendant GM's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

111.    Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable.

### AS AND FOR A FIFTH CAUSE OF ACTION: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 42 U.S.C. §2000(e) et seq. AGAINST DEFENDANT GM

112.    Plaintiff repeats, reiterates and reasserts the allegations set forth in Paragraphs "1" through "111" of this Complaint with the same force and effect as though more fully set forth herein.

113.    Defendant GM's actions through its agents, as described above, evidence its retaliation against Plaintiff due to Plaintiff's engagement in statutorily protected rights.

114.    Defendant GM subjected Plaintiff to adverse terms and conditions of employment because she made complaints of discrimination and hostile environment on the basis of race, including but not limited to denying her overtime, promotions and transferring her to another position which caused her physical injury.

115.     Defendant GM retaliated against Plaintiff because of her engagement in statutorily protected activity is violative of Title VII of the Civil Rights Act of 1964.

116.     As a direct and proximate result of Defendant GM's retaliation and conduct towards Plaintiff, Plaintiff has suffered physical and emotional distress.  Moreover, Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury and monetary damages as a result of Defendant GMs' retaliation, unless and until this Court grants relief and an award of, *inter alia*, back pay, front pay, and compensatory damages against Defendants pursuant to Title VII of the Civil Rights Act of 1964.

117.     As a result of Defendant GM's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

118.     Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable.

## AS AND FOR A SIXTH CAUSE OF ACTION:   RETALIATION IN VIOLATION OF NEW YORK'S HUMAN RIGHTS LAW (N.Y. Executive Law § 290 et seq.) AGAINST DEFENDANT GM

119.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "118" as though fully set forth herein.

120.     As set forth above, this Court has jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

121.     Defendant GM's actions through its agents, as described above, evidence its retaliation against Plaintiff due to Plaintiff's engagement in statutorily protected rights.

122.     Defendant GM subjected Plaintiff to adverse terms and conditions of employment

because she made complaints of discrimination and hostile environment on the basis of race, including but not limited to denying her overtime, promotions and transferring her to another position which caused her physical injury.

123.    Defendant GM's action toward Plaintiff were violative of New York's Human Rights Law, specifically N.Y. Executive Law § 296(1)(e).

124.    As a direct and proximate result of Defendant GM's retaliatory conduct towards Plaintiff, Plaintiff has suffered physical and emotional distress.  Moreover, Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury and monetary damages as a result of Defendants' retaliation, unless and until this Court grants relief and an award of, inter alia, back pay, front pay, and compensatory damages against Defendants pursuant to the NYSHRL.

125.    As a result of Defendant GM's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million .

126.    Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable.

## AS AND FOR A SEVENTH CAUSE OF ACTION: RACE DISCRIMINATION IN VIOLATION OF 42  U.S.C. § 1981 AGAINST DEFENDANT GM

127.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "126" as though fully set forth herein.

128.    By the actions detailed above, Defendant GM has discriminated against Plaintiff on the basis of her race in violation of the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981 by, *inter alia,* denying her the same terms and conditions of employment available to Caucasian

employees, including but not limited to, subjecting her disparate working conditions and denying her terms and conditions of employment equal to that of Caucasian employees.

129.    As a direct and proximate result of Defendant GM's unlawful and discriminatory Conduct in violation of the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981, Plaintiff has suffered, and continues to suffer, monetary and economic harm, including, but not limited to, loss of future income, compensation and benefits for which she is entitled to an award of damages.

130.    Defendant GM's unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981, for which Plaintiff is entitled to an award of punitive damages.

131.    As a result of Defendant GM's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million .

132.    Plaintiff demands a jury trial as to all issues so triable.

### AS AND FOR A EIGHTH CAUSE OF ACTION: RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 42 U.S.C. §2000(e) et seq. AGAINST DEFENDANT UAW LOCAL 686

133.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "132" as though fully set forth herein.

134.    Defendant UAW LOCAL 686 discriminated against Plaintiff with respect to the terms and conditions of employment because of her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, as amended by the Civil Rights Act of 1991.

135.    Defendant UAW LOCAL 686 violated Title VII by creating and allowing a culture of race discrimination to permeate Plaintiff's workplace and all aspects of her work environment. This hostile and abusive work environment was created by decisions, actions and conduct engaged in by Defendant UAW LOCAL 686. The severe and pervasive abusive environment was maintained since January of 2021 through the present and fostered and promoted by Defendants' discriminatory acts and conduct as described herein.

136.    The discrimination described herein shows a continuous pattern of unlawful employment practices.

137.    Defendant UAW LOCAL 686 had actual and constructive knowledge of the conduct described herein, but failed to take any remedial action to put an end to the harassment Plaintiff suffered.

138.    Defendant UAW LOCAL 686 knowingly and recklessly discriminated against the Plaintiff on the basis of her race by having direct and firsthand knowledge of discriminatory acts towards Plaintiff and failing to take remedial and precautionary steps for the protection of the rights of the Plaintiff.

139.    Defendant UAW LOCAL 686 knowingly and recklessly permitted its employees, supervisors and leadership team to treat African American employees in a manner different from the treatment received by similarly situated Caucasian employees.

140.    Defendant UAW LOCAL 686 failed to provide Plaintiff with a suitable work

environment and knowingly and recklessly exposed Plaintiff to a racially hostile and unsupportive work environment.

141.    Defendant UAW LOCAL 686's wrongful acts, conducts, and omissions including but not limited to, those described above, were willful and wanton and done with malice or reckless indifference to Plaintiff's rights and feelings, thereby entitling Plaintiff to an award of compensatory damages, including but not limited to lost wages, loss of future income, compensation and benefits, compensation for emotional pain and suffering and/or punitive damages.

142.    As a result of Defendant UAW LOCAL 686's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

143.    Plaintiff demands a jury trial as to all issues so triable.

**AS AND FOR A NINTH CAUSE OF ACTION: RACE
DISCRIMINATION IN VIOLATION OF
NEW YORK HUMAN RIGHTS LAW
NEW YORK EXECUTIVE LAW §290 et seq.
AGAINST DEFENDANT UAW LOCAL 686**

144.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through 143" as though fully set forth herein.

145.    Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a).

146.    During the course of Plaintiff's employment, Defendant UAW LOCAL 686 treated

Plaintiff adversely because of her race and engaged in a knowing, intentional, willful, and voluntary course of wrongful discriminatory conduct in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq.*

147.    As a result of Defendant UAW LOCAL 686's actions, conduct, and omissions, including but not limited to those described above, Defendant UAW LOCAL 686 subjected Plaintiff to adverse employment action because of her race in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq.*

148.    Defendant UAW LOCAL 686 has engaged in a pattern and practice of discrimination against Plaintiff with respect to compensation, terms, conditions, and privileges of employment and subjected her to a hostile work environment because of her race in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq.*

149.    Defendant UAW LOCAL 686 discriminated against Plaintiff in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq.*

150.    Defendant UAW LOCAL 686's wrongful acts, conduct, and omissions, including but not limited to those described above, were willful and wanton and done with a reckless disregard of Plaintiff's rights.

151.    As a result of Defendant UAW LOCAL 686's actions, conduct, and omissions, including but not limited to, those described above, Plaintiff incurred damages including but not limited to, lost wages and employee benefits, lost employment opportunities, lost future income, compensation and benefits, mental anguish, and embarrassment.

152.    As a result of Defendant UAW LOCAL 686's wrongful acts, conduct, and

omissions, including but not limited to those described above, Plaintiff has been damaged in the

amount of $2 million.

153.    Plaintiff demands a jury trial as to all issues so triable.

### AS AND FOR A TENTH CAUSE OF ACTION: RACIAL HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 42 U.S.C. §2000(e) et seq. AGAINST DEFENDANT UAW LOCAL 686

154.    Plaintiff repeats and realleges each and every allegation contained in paragraphs

"1" through "153" as though fully set forth herein.

155.    Defendant UAW LOCAL 686 discriminated against Plaintiff with respect to the

terms and conditions of employment because of her race, in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, as amended by the Civil Rights Act of 1991.

156.    Defendant GM violated Title VII by creating and allowing a culture of race

discrimination to permeate Plaintiff's workplace and all aspects of her work environment by

continually allowing employees to make discriminatory statements against Plaintiff.  This hostile

and abusive work environment was created by decisions, actions and conduct engaged in by

Defendant GM.

157.    The discrimination described herein shows a continuous pattern of unlawful

employment practices.

158.    Defendant UAW LOCAL 686 had actual and constructive knowledge of the

conduct described herein, but failed to take any remedial action to put an end to the harassment

Plaintiff suffered.

159.    Defendant UAW LOCAL 686 knowingly and recklessly discriminated against the

Plaintiff on the basis of her race by having direct and firsthand knowledge of discriminatory and racially hostile acts towards Plaintiff and failing to take remedial and precautionary steps for the protection of the rights of the Plaintiff.

160.    Defendant UAW LOCAL 686 failed to provide Plaintiff with a suitable work environment and knowingly and recklessly exposed Plaintiff to a racially hostile and unsupportive work environment.

161.    Defendant UAW LOCAL 686's wrongful acts, conducts, and omissions including but not limited to, those described above, were willful and wanton and done with malice or reckless indifference to Plaintiff's rights and feelings, thereby entitling Plaintiff to an award of compensatory damages, including but not limited to lost wages, loss of future income, compensation and benefits, compensation for emotional pain and suffering and/or punitive damages.

162.    As a result of Defendant UAW LOCAL 686's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

163.    Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable.

**AS AND FOR A ELEVENTH CAUSE OF ACTION: RACIAL HOSTILE WORK ENVIRONMENT IN VIOLATION OF NEW YORK'S HUMAN RIGHTS LAW (N.Y. Executive Law § 290 et seq.) AGAINST DEFENDANT UAW LOCAL 686**

164.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "163" as though fully set forth herein.

165.    As set forth above, this Court has jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

166.    Defendant UAW LOCAL 686 violated the Executive Law by creating and allowing a culture of age, race, and disability discrimination and hostile work environment to permeate Plaintiff's workplace and all aspects of her work environment.  This hostile and abusive work environment was created by decisions, actions and conduct engaged in by Defendants.

167.    The discrimination described herein shows a continuous pattern of unlawful employment practices. Specifically, Defendants created a hostile work environment by (1) failing to take corrective or remedial action against employees making racially discriminatory and racially hostile remarks about Plaintiff, and (2) transferring Plaintiff to an unfavorable position and department that caused physical injury to her wrists. Defendants' actions have caused injury to Plaintiff and a strain on her emotional and physical health.

168.    Defendant UAW LOCAL 686 had actual and constructive knowledge of the conduct described herein, but failed to take any remedial action to put an end to the discrimination Plaintiff suffered and the hostile environment to which she was subjected.

169.    Defendant UAW LOCAL 686 failed to provide Plaintiff with a suitable work environment and knowingly and recklessly exposed Plaintiff to a discriminatory and potentially physically dangerous work environment due to Plaintiff's race.

170.    Defendant UAW LOCAL 686's wrongful acts, conducts, and omissions including but not limited to, those described above, were willful and wanton and done with malice or reckless indifference to Plaintiff's rights and feelings, thereby entitling Plaintiff to an award of compensatory damages, including but not limited to lost wages, loss of future income, compensation and benefits, compensation for emotional pain and suffering and/or punitive damages.

171.    As a result of Defendant UAW LOCAL 686's wrongful acts, conduct, and

omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

172.    Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable.

### AS AND FOR A TWELVTH CAUSE OF ACTION: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 42 U.S.C. §2000(e) et seq. AGAINST DEFENDANT UAW LOCAL 686

173.    Plaintiff repeats, reiterates and reasserts the allegations set forth in Paragraphs "1" through "172" of this Complaint with the same force and effect as though more fully set forth herein.

174.    Defendant Local 686 actions through its agents, as described above, evidence its retaliation against Plaintiff due to Plaintiff's engagement in statutorily protected rights.

175.    Defendant UAW LOCAL 686 subjected Plaintiff to adverse terms and conditions of Employment because she made complaints of discrimination and hostile environment on the basis of race, including but not limited to denying her overtime, promotions and transferring her to another position which caused her physical injury.

176.    Defendant UAW LOCAL 686's retaliation of Plaintiff because of her engagement in statutorily protected activity is violative of Title VII of the Civil Rights Act of 1964.

177.    As a direct and proximate result of Defendant UAW LOCAL 686's retaliation and conduct towards Plaintiff, Plaintiff has suffered physical and emotional distress.  Moreover, Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury and monetary damages as a result of Defendants' retaliation, unless and until this Court grants relief and an award of, *inter alia*, back pay, front pay, and compensatory damages against Defendants pursuant to Title VII of the Civil Rights Act of 1964.

178.    As a result of Defendant UAW LOCAL 686's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

179.    Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION: RETALIATION IN VIOLATION OF NEW YORK'S HUMAN RIGHTS LAW (N.Y. Executive Law § 290 et seq.) AGAINST DEFENDANT UAW LOCAL 686

180.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "179" as though fully set forth herein.

181.    As set forth above, this Court has jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

182.    Defendant UAW LOCAL 686's actions through its agents, as described above, evidence its retaliation against Plaintiff due to Plaintiff's engagement in statutorily protected rights.

183.    Defendant subjected Plaintiff to adverse terms and conditions of employment because she made complaints of discrimination and hostile environment on the basis of race, including but not limited to denying her overtime, promotions and transferring her to another position which caused her physical injury.

184.    Defendant UAW LOCAL 686's action toward Plaintiff were violative of New York's Human Rights Law, specifically N.Y. Executive Law § 296(1)(e).

185.    As a direct and proximate result of Defendant UAW LOCAL 686's retaliatory conduct towards Plaintiff, Plaintiff has suffered physical and emotional distress.  Moreover, Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury and monetary

damages as a result of Defendants' retaliation, unless and until this Court grants relief and an award of, inter alia, back pay, front pay, and compensatory damages against Defendants pursuant to the NYSHRL.

186.    As a result of Defendants' unlawful employment practices, Plaintiff has been damaged in an amount of no less than One Million and 00/100 ($1,000,000.00) Dollars, exclusive of interest and costs.

187.    Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable

### AS AND FOR A FOURTEENTH CAUSE OF ACTION: RACE DISCRIMINATION IN VIOLATION OF 43 U.S.C. § 1981 AGAINST DEFENDANT UAW LOCAL 686

188.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "187" as though fully set forth herein.

189.    By the actions detailed above, Defendant UAW LOCAL 686 has discriminated against Plaintiff on the basis of her race in violation of the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981 by, *inter alia,* denying her the same terms and conditions of employment available to Caucasian employees, including but not limited to, subjecting her disparate working conditions and denying her terms and conditions of employment equal to that of Caucasian employees.

190.    As a direct and proximate result of Defendant UAW LOCAL 686's unlawful and discriminatory conduct in violation of the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981, Plaintiff has suffered, and continues to suffer, monetary and economic harm, including, but not

limited to, loss of future income, compensation and benefits for which she is entitled to an award of damages.

191.    Defendant UAW LOCAL 686's unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981, for which Plaintiff is entitled to an award of punitive damages.

192.    As a result of Defendant UAW LOCAL 686's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

193.    Plaintiff demands a jury trial as to all issues so triable.

**WHEREFORE**, Plaintiff prays to this Court for the following:

1.    For the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteen and Fourteenth Causes of Action, Plaintiff demands judgment against Defendants, GENERAL MOTORS, LLC, a/k/a GM COMPONENTS HOLDINGS, LLC, f/k/a DELPHI AUTOMOTIVE SYSTEMS, LLC, a/k/a DPH-DAS, LLC, f/k/a GENERAL MOTORS CORPORATION and UNITED AUTOMOBILE, AEROSPACE and AGRICULTURAL IMPLEMENT WORKERS OFAMERICA a/k/a UAW LOCAL 686, as follows:

a.    For recovery of $2 million against Defendants as actual damages for loss of wages, overtime pay, promotions, mental anguish, emotional distress, and embarrassment in an equal amount as liquidated damages, and compensatory damages and for punitive damages together with interest as a result of Defendants' discrimination against Plaintiff;

b.    For the recovery of costs and counsel fees as provided by statute;

c.  For trial by jury on all triable issues; and

d.  For such other and further relief as the Court may deem just, fit and proper.

Dated:  May 13, 2025
        Buffalo, New York

                                        Respectfully Submitted,


                                        */s/ Kevin P. Wicka*_____
                                        Kevin P. Wicka, Esq.
                                        The Tarantino Law Firm, LLP
                                        *Attorneys for Plaintiff, Charleen Hannon*
                                        City Centre
                                        610 Main Street, Suite 300
                                        Buffalo, New York 14202
                                        (716) 849-6500
                                        kwicka@tarantinolaw.com